UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------  :
SHIVA STEIN,                                               :
                                                           :
      Plaintiff,                            :  Civil Action No. 22-cv-6775
                                                           :
v.                                                         :  **COMPLAINT FOR VIOLATIONS OF**
                                                           :  **SECTIONS 14(a) AND 20(a) OF THE**
HANGER, INC., CHRISTOPHER B.                               :  **SECURITIES EXCHANGE ACT OF**
BEGLEY, VINIT K. ASAR, ASIF AHMAD,                         :  **1934**
JOHN T. FOX, THOMAS C. FREYMAN,                            :
STEPHEN E. HARE, MARK M. JONES,                            :  **JURY TRIAL DEMANDED**
CYNTHIA L. LUCCHESE, RICHARD R.                            :
PETTINGILL, KATHRYN M. SULLIVAN,                           :
                                                           :
      Defendants.                           :
                                                           :
---------------------------------------------------------  :

      Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

      1.     This is an action brought by Plaintiff against Hanger, Inc. ("Hanger or the "Company") and the members Hanger's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Hanger by affiliates of Patient Square Capital, LP ("Patient Square Capital").

      2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 5, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Hero Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Hero Parent, Inc. ("Parent"), will merge with and into Hanger with Hanger surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on July 21, 2022 (the "Merger Agreement"), each Hanger stockholder will receive $18.75 in cash (the "Merger Consideration") for each Hanger share owned.

3. As discussed below, Defendants have asked Hanger's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Hanger's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the New York Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Hanger stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Christopher B. Begley has served as a member of the Board since January 2018 and is the Chairman of the Board.

11. Individual Defendant Vinit K. Asar has served as a member of the Board since May 2012 and is the Company's President and Chief Executive Officer.

12. Individual Defendant Asif Ahmad has served as a member of the Board since August 2014.

13. Individual Defendant John T. Fox has served as a member of the Board since November 2017.

14. Individual Defendant Thomas C. Freyman has served as a member of the Board since November 2017.

15. Individual Defendant Stephen E. Hare has served as a member of the Board since 2010.

16. Individual Defendant Mark M. Jones has served as a member of the Board since September 2020.

17. Individual Defendant Cynthia L. Lucchese has served as a member of the Board since May 2015.

18. Individual Defendant Richard R. Pettingill has served as a member of the Board since February 2014.

19. Individual Defendant Kathryn M. Sullivan has served as a member of the Board since December 2015.

20. Defendant Hanger is a Delaware corporation and maintains its principal offices at 10910 Domain Drive, Suite 300, Austin, TX 78578. The Company's stock trades on the New York Stock Exchange under the symbol "HNGR."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

23. Hanger provides orthotic and prosthetic (O&P) services in the United States. It operates in two segments, Patient Care and Products & Services. The Patient Care segment owns and operates Hanger clinic, which specializes in the design, fabrication, and delivery of custom

4

O&P devices through patient care clinics and satellite locations; and offers payor network contracting services to other O&P providers. The Products & Services segment engages in the distribution of various O&P parts, componentry, and devices to independent O&P providers; development of specialized rehabilitation technologies; and provision of evidence-based clinical programs for post-acute rehabilitation to patients at approximately 4,000 skilled nursing and post-acute providers. This segment also manufactures and sells therapeutic footwear for diabetic patients in the podiatric market. As of December 31, 2021, the company operated approximately 760 patient care clinics and 115 satellite locations in 47 states and the District of Columbia. It also distributes O&P devices and components, manages O&P networks, and provides therapeutic solutions to patients and businesses in acute, post-acute, and clinic settings. The Company was formerly known as Hanger Orthopedic Group, Inc. and changed its name to Hanger, Inc. in June 2012. Hanger was founded in 1861 and is headquartered in Austin, Texas.

24. On July 21, 2022, the Company announced the Proposed Transaction:

> AUSTIN, Texas--(BUSINESS WIRE)--Hanger, Inc. (NYSE: HNGR), a leading provider of orthotic and prosthetic (O&P) patient care services and solutions, announced today that it has entered into a definitive agreement to be acquired by Patient Square Capital, a dedicated health care investment firm. Under the terms of the agreement, which has been unanimously approved by Hanger's Board of Directors, Hanger stockholders will receive $18.75 in cash per share, representing an approximately 29% premium to the 30 calendar day volume-weighted average price (VWAP) ending July 20, 2022, and a total enterprise value of approximately $1.25 billion. Upon completion of the transaction, Hanger will become a privately held company, and its common stock will no longer be traded on the New York Stock Exchange (NYSE).
>
> Vinit Asar, Hanger's President and Chief Executive Officer (CEO) said, "I'm very pleased to be announcing this agreement today as the transaction will result in immediate and substantial value creation for our stockholders. This transaction represents a culmination of an extensive review by our Board of Directors of strategic alternatives to provide value to our stockholders and to

offer financial flexibility for our company to pursue future growth initiatives. Patient Square Capital recognizes the value of our brand and the quality of our world-class team, and is grounded in similar values that guide our actions. They share the same long-term vision for our company, which makes them an excellent partner for the next phase of our journey."

Patient Square Capital is a patient-centered investment firm with a team of seasoned executives that uses deep health care expertise, a broad network of relationships, and a true partnership approach to make investments in companies to grow and thrive, partnering with organizations who they believe have the ability to improve patient lives, strengthen communities, and create a healthier world.

Patient Square Capital Managing Partner Jim Momtazee said, "I have closely followed Hanger's impactful work for most of my career and genuinely respect the positive impact they have on their patients and customers. Patient Square values the steps taken by the leadership team to strengthen the company's position and is thrilled to partner with the Hanger management team to support the next phase of their growth."

**Transaction Details**

The transaction will be financed through a combination of committed equity financing provided by Patient Square Equity Partners, LP, as well as committed debt financing to be led by funds managed by Ares Capital Management LLC.

The transaction is expected to close in the fourth quarter of 2022, subject to the receipt of stockholder approval, regulatory approvals, and the satisfaction of other customary closing conditions. Following the close of the transaction, Hanger will continue to be led by Asar, who has been its President and CEO for more than a decade, and will maintain its headquarters in Austin, Texas.

**Advisors**

BofA Securities, Inc. is acting as the exclusive financial advisor to Hanger, and Foley & Lardner LLP is serving as legal counsel. Greenberg Traurig, LLP is acting as M&A legal counsel, Kirkland & Ellis LLP is acting as financing legal counsel, and Latham & Watkins LLP is acting as health care legal counsel to Patient Square

6

Capital. Proskauer Rose LLP is acting as financing legal counsel to Ares Capital Management LLC.

\* \* \*

25.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Hanger's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

26.     On August 5, 2022, Hanger filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Proxy Statement fails to provide material information concerning financial projections by Hanger management and relied upon by BofA in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and BofA with forming a view about the stand-alone

valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Hanger management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the

measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32. With respect to BofA's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

33. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

34. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Hanger; (ii) the inputs and assumptions underlying the terminal forward multiples ranging from 8.5x to 10.5x; and (iii) the inputs and assumptions underlying the use of the range of discount rates of 7.75% to 9.25%.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Hanger within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Hanger, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Hanger, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Hanger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 9, 2022                                          **MELWANI & CHAN LLP**

                                                               By: /s/ _____

                                                                 Gloria Kui Melwani (GM5661)
                                                                 1180 Avenue of the Americas, 8th Fl.
                                                                 New York, NY 10036
                                                                 Telephone: (212) 382-4620
                                                                 Email: gloria@melwanichan.com

                                                                *Attorneys for Plaintiff*